OPINION
Rodney Bolin appeals from an entry and order finding him to be a sexual predator. Bolin advances four assignments of error which we consider in a different order than the order in which they were presented in Bolin's appellate brief. The facts necessary for our disposition of the assignments will be set forth in our discussion of four assignments.
 2. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
Bolin contends that his counsel was unprepared for the sexual predator hearing; failed to contact, interview, and subpoena helpful witnesses; and failed to consult with him as to mitigating evidence, as to whether he wished to testify, as to his rights with respect to the hearing, or as to the applicable law.
The trial court scheduled sexual classification hearings for eight individuals on October 24, 2000. It appears from the 44-page transcript of proceedings as to all eight individuals that in addition to Bolin, Bolin's counsel represented five and possibly six of the other individuals.
It is evident from the transcript that at the outset of the proceedings, Bolin's counsel was unprepared because there was confusion as to who was to represent Bolin, and the "packet" had been sent to another attorney. The packet contained a completed H.B. 180 screening instrument, a ten-page forensic evaluation based on a June 28, 2000 evaluation, the termination entry, the presentence investigation report (or P.S.I.) prepared in 1990, and a letter from Jacqueline Lawrence, Bolin's caseworker at Allen Correctional Institution, dated August 30, 2000.
The packet constituted the State's evidence on the question of whether Bolin is a sexual predator. The trial court furnished Bolin's counsel with its packet and gave counsel an opportunity to review it before proceeding with Bolin's hearing. Thus, the record demonstrates that counsel was familiar with the contents of the packet by the time Bolin's case was recalled for presentation.
Bolin spoke at some length on his own behalf and identified two witnesses whom he thought would refute the prosecutor's representations that he had a poor prison record and a drug and alcohol problem. The first witness Bolin identified was Jacqueline Lawrence, his caseworker at Allen Correctional Institute, and the second witness was Ed Bowser, his maintenance supervisor at Allen. It cannot be known from the record before us whether Bolin informed counsel of these witnesses. However, the packet contained a letter from Ms. Lawrence that detailed his infractions since arriving at Allen March 29, 1995 — almost 5+ years prior to the date of the letter — and stating that Bolin had "earned favorable lock and work evaluations." We doubt that Ms. Lawrence and Mr. Bowser, if called as witnesses, could have added much more than was contained in Ms. Lawrence's letter, particularly on the issue of whether Bolin is a sexual predator. In any event, the trial court offered Bolin a continuance within which to obtain and present favorable evidence, and he declined.
Bolin's contention that his counsel did not consult with him before going forward is not demonstrated by the transcript. His stated belief that he would be found to be a sexual predator and his belief that this classification should be reserved for child molesters do not necessarily demonstrate a lack of communication with counsel.
In our judgment, the deficiencies attributed to counsel are either not demonstrated by the record or do not amount to ineffective assistance of counsel in the constitutional sense. State v. Bradley (1989),42 Ohio St.3d 136.
The second assignment is overruled.
 3. THE COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS, AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS, THROUGH FAILING TO CONDUCT A HEARING THAT COMPORTED WITH THE MANDATES OF R.C. 2950.01, ET SEQ.
Bolin contends under this assignment that he was deprived of the meaningful hearing provided for by R.C. 2950.01 because his counsel was unprepared when he arrived at court; potential witnesses were not contacted, interviewed, or subpoenaed; and Bolin misunderstood the nature of the proceedings.
As to the first two contentions, we repeat what we have said under the second assignment of error. We are not persuaded from this record that Bolin misunderstood the nature of the proceedings. Bolin's opinion that sexual predator status should be reserved for child molesters doesn't mean he didn't understand that he could also be classified as a sexual predator, even though he was not a child molester. This is particularly so because the trial court explained this to Bolin. If Bolin initially believed that his classification as a sexual predator was a forgone conclusion, that should have been dispelled by the trial court's offering him a continuance to obtain favorable testimony, which he declined.
The third assignment is overruled.
 4. THE COURT'S DESIGNATION OF APPELLANT AS A SEXUAL PREDATOR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In 1990, Bolin and three other men participated in an unusually vicious kidnapping, robbery, and gang rape of a young adult woman, after which they left her to fend for herself in the field where the sexual assaults had occurred. According to the P.S.I., Bolin punched the victim in the face and threatened her so she would surrender her ATM card and PIN. This blow caused severe damage to the victim's eye, resulting in at least two surgeries. The victim also underwent extensive psychological counseling. Bolin also stole four rings from the victim's purse. Indicted for five counts of rape, one count of kidnapping, and one count of robbery, Bolin eventually entered guilty pleas to one count of rape and one count of robbery, for which he was sentenced to concurrent terms of 8 — 25 years.
It has been held that a conviction for rape cannot, without more, constitute clear and convincing evidence that the offender is a sexual predator. See State v. Hicks (1998), 128 Ohio App.3d 647. The question presented by this assignment is whether the trial court reasonably determined that the evidence before it constituted clear and convincing evidence that Bolin is a sexual predator, i.e., that he is likely to commit another sexually oriented offense. R.C. 2950.01(E).
The evidence before the court was as stated above. Bolin contends that the presentence investigation report was stale, the Lawrence letter documented non-recent, non-sexual institutional misbehavior, the H.B. 180 screening instrument is insufficient of itself, the psychological evaluation supports a lesser classification, and assertions that Bolin has an alcohol and drug problem are unsubstantiated.
It goes without saying, however, that the elements of the evidence must be considered as a whole. The P.S.I. contains a graphic description of the actual incident giving rise to the charges against Bolin, and its effect upon the victim. The H.B. 180 screening instrument contains the recommendation of a trained probation officer that Bolin be classified a sexual predator, based on certain factors identified by the legislature as relevant to the sexual classification determination, including Bolin's criminal record consisting of juvenile adjudications and adult convictions, cruelty in commission of the rape and robbery, and substance abuse. The Lawrence letter discloses that Bolin has been found guilty of nine rule violations during the almost 5+ years he has been at the Allen Correctional Institution. Prior to being confined at Allen, Bolin spent two years at Madison Correctional Institution before being sent to Lebanon Correctional Institution "under close security" for three years on account of "some Class II violations" at Madison. (Forensic Evaluation).
The forensic evaluation, performed in late June, 2000, makes no recommendation as to how Bolin should be classified. The evaluation reports that Bolin has not completed the third, six-month step of a sex offender treatment program. The same evaluation reports that Bolin has not completed drug and alcohol treatment at Madison and has ceased his "occasional" participation in Narcotics Anonymous and Alcoholics Anonymous because there was "no reason to pursue it" after he was denied parole. Bolin reported during the interview with the psychologist that he occasionally used marijuana while in prison, and he has attributed his involvement in the rape and robbery to having been under the influence of alcohol and drugs.
The evaluator, Forensic Psychologist Susan Perry Dyer, observed in her report that the sexual classification inquiry requires a prediction of lifetime risk for which there is no scientific guidance. Tracking the legislative factors contained in R.C. 2950.09(B)(2), she identified several factors she opined made Bolin a higher than average risk for committing another sexually oriented offense. One factor was Bolin's criminal record, which included juvenile delinquency adjudications for theft, criminal damaging, and breaking and entering, and convictions as an adult for breaking and entering, forgery, and receiving stolen property. Another factor was the fact that the victim was an adult woman, Dr. Dyer observing "that offenders who rape adult women are in a very high risk category." Dr. Dyer also opined that the force and violence with which Bolin and the co-defendants committed the offenses, which she equated with cruelty, made Bolin a greater than average risk to commit another sexually oriented offense. Dr. Dyer also opined that the use of alcohol or drugs increases the risk of recidivism because "it disinhibits" (sic) the offender. She observed that Bolin has a significant alcohol and drug problem which "places him at somewhat higher risk." (It will be recalled that Bolin attributes his criminal behavior in raping and robbing the victim to his being under the influence of alcohol and drugs. Yet, he has not completed drug and alcohol treatment, and has ceased his occasional participation in AA and NA). Finally, Dr. Dyer stated that Bolin's having not completed the third step of a sex offender treatment program "places him at risk for reoffense."
The evidence before the trial court was, for the most part, not in dispute. Thus, despite the assertion that the finding that Bolin is a sexual predator is against the manifest weight of the evidence, we view the inquiry to be whether the finding is supported by sufficient evidence. The question before us then is whether the trial court could have reasonably concluded that the evidence constituted clear and convincing proof that Bolin is likely to commit another sexually oriented offense. The question is not whether we find the evidence clear and convincing proof, but whether the evidence is so deficient that no reasonable fact finder could have found that the evidence was clear and convincing proof that Bolin was likely to commit another sexually oriented offense, i.e., that the evidence was not clear and convincing as a matter of law. See State v. Jenks (1991), 61 Ohio St.3d 259. Although the evidence in this case is not as impressive as that which we have reviewed in some other cases, we are not prepared to say it was not clear and convincing as a matter of law. Having so concluded, and the evidence having been largely undisputed, the finding was also not against the manifest weight of the evidence. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
The fourth assignment is overruled.
 1. THE COURT ERRED, AS A MATTER OF LAW, IN CLASSIFYING APPELLANT AS A SEXUAL PREDATOR.
Under this assignment, Bolin contends that certain statements by the trial court belie its implicit determination that there was clear and convincing proof that he was a sexual predator. Bolin attributes the following statement to the trial court:
 "I have no doubt that everything you have said is true . . . I believe what you say that once you get out, this sort of thing will never happen again." (Emphasis in Bolin's brief).
Before the statements in question by the trial court, Bolin had addressed the trial court at length in an unsworn statement. He minimized the seriousness of his prison record and said he had completed the sex offender program. He stated that he was a changed person and had maintained a positive way of thinking. He said he didn't molest children, and that the rape and robbery followed problems with his fiancee. He denied that he and the co-defendants tortured the victim. He stated that "in (his) eyes, a predator is molesting a kid numerous times" and that when he was released, he would not commit a sexual offense against a woman or child. He claimed to be under the influence of alcohol and drugs when the rape and robbery occurred, and that he no longer abused drugs and alcohol. He stated that his case worker and maintenance supervisor would vouch for his good institutional record at Allen.
Thereafter, immediately prior to finding Bolin to be a sexual predator, the trial court stated in part as follows:
 . . . the Court must follow certain procedures and guidelines as outlined in the statute in determining your designation. I have no doubt that everything you have said is true, and in your mind you know you are not, I will use the word a sexual predator. What I am trying to explain to you is that this is almost like a legal term of art. It is not just a person who has molested children, that sort of thing, and so whatever the Court finds your designation, it will be based upon the statutory or legal requirements that I must follow through, and we have gone through a procedure about everything, including past and present.
 * * * . . . I believe what you have said, and I don't want you to regress on the progress you have made. I believe what you say that once you get out, this sort of thing will never happen again. But, all we are trying to do is make a designation so you will have to fulfill certain reporting requirements. And all the things that you indicated I believe pretty much are said in the psychological report. (Emphasis ours).
It is the underlined language from the above-quoted passages upon which Bolin seizes in arguing that the trial court was not persuaded that he is a sexual predator. Standing alone, this language may call into question the determination that Bolin is a sexual predator. We must, however, consider this language together with the remainder of the statements from which it is extracted, and also the juxtaposition of these statements and the sexual predator determination that immediately followed.
Taking these considerations in reverse order, it is inconceivable that the trial court meant that it had determined that Bolin was unlikely to commit another sexually oriented offense when, immediately following the above-quoted statements, the trial court found Bolin to be a sexual predator.
Secondly, examination of the above-quoted statements gives context to the underlined language upon which Bolin relies. It appears to us that the trial court meant little more than that it found Bolin sincere in his belief that he was not a sexual predator and sincere in his belief that upon release from prison he would not commit another sexually oriented offense.
The sincerity of Bolin's beliefs did not undermine the evidence that he is a sexual predator.
The first assignment of error is overruled.
 ____________ WOLFF, P. J.
BROGAN, J. and GRADY, J., concur.